UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JEANETTE MAYNARD** | ) | CASE NO. 5:16-CV-01889 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE BURKE |
| | ) | |
| **VALLEY CHRISTIAN ACADEMY, INC.** | ) | |
| | ) | **MEMORANDUM** |
| Defendant. | ) | **OPINION & ORDER** |
| | ) | |

## I.  INTRODUCTION

Plaintiff Jeanette Maynard ("Maynard" or "Plaintiff") brought suit against Defendant Valley Christian Academy, Inc. ("Defendant" or "VCA") for alleged violations of various federal and state labor statutes seeking, *inter alia*, recovery of unpaid wages.[1]  Doc. 6, pp. 8–12.

Defendant has filed a Motion to Stay Proceedings Pending Mandatory Alternative Dispute Resolution, seeking to compel arbitration pursuant to the terms of Maynard's employment agreement.[2]  Doc. 9 ("Motion to Stay").  Maynard's employment contract with VCA includes an arbitration clause that provides for the resolution of disputes by "following the biblical pattern of Matthew 18:15–17," and states that any unresolved disputes shall be submitted to "Christian mediation and, if necessary, legal binding arbitration." Doc. 9-1, p. 3, ¶ 10.  The agreement further states, "The parties understand that these methods shall be the sole remedy for any controversy or claim arising out of this agreement and expressly waive their right to file a lawsuit in any civil

---

[1] Plaintiff alleges violations of the Fair Labor Standards Act (29 U.S.C. §§ 201–219), the Ohio Minimum Fair Wage Standards Act (O.R.C. § 4111.14), and the Ohio Prompt Pay Act (O.R.C. § 4113.15).  Plaintiff also alleges retaliation for seeking worker's compensation under O.R.C. § 4123.90.  Doc. 6 pp. 1–2, ¶ 1.

[2] Defendant filed its Motion to Stay Proceedings Pending Mandatory Alternative Dispute Resolution (Doc. 9) on November 4, 2016.  Plaintiff filed a memorandum opposing Defendant's motion (Doc. 17) on December 2, 2016. Defendant filed a reply to Plaintiff's opposition (Doc. 19) on December 15, 2016.

1

court against one another for such disputes[.]" Doc. 9-1, p. 3, ¶ 10. Plaintiff challenges the enforceability of the arbitration provision. Doc. 17.

The Sixth Circuit has instructed that courts are to examine such contractual provisions "in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). The Court finds that the arbitration clause is valid and should be enforced. Accordingly, the Defendant's Motion to Stay (Doc. 9) is **GRANTED**.

## II. BACKGROUND

### A. Factual Background

VCA an Ohio non-profit corporation located in Aurora, Portage County, Ohio. Doc. 6, p. 2, ¶ 3. VCA is a private Christian school with a total enrollment of approximately 150–250 students in preschool, elementary, and secondary school programs. Doc 6, p. 3, ¶ 7. Maynard is a resident of Portage County and a former employee of VCA. Doc. 6, pp. 1–2, ¶¶ 1–2.

VCA employed Maynard as its "Facilities Manager" from April 2005 until July 22, 2016. Doc. 6, p. 4, ¶¶ 16–17. Maynard provided typical janitorial and custodial services and was compensated at an hourly rate while employed at VCA. Doc. 6, p. 4, ¶¶ 18–21. VCA classified Maynard as a "non-exempt" employee for compensation purposes. Doc. 6, p. 4, ¶ 21.

Maynard alleges that she worked an average of ten-and-one-half (10.5) hours per day during the school year while employed at VCA. Doc. 6, p. 4, ¶ 22. Maynard alleges that VCA instructed her to record her first eight hours worked on her timesheet and then separately record two additional hours as "comp time" and that she was prohibited from recording the additional half hour that she worked on her time sheets. Doc. 6, p. 5, ¶¶ 23-24. Maynard further alleges that VCA has not paid her for any of the hours allocated as "comp time" or the one-half hour she was prohibited from allocating. Doc. 6, p. 5, ¶ 24.

Maynard resides down the street from VCA.[3] Doc. 6, pp. 5–7, ¶¶ 26–28. She alleges that, in addition to her normal duties, she was regularly required to drive from her home to VCA after school hours to unlock the premises for employees, turn on computers so they could be accessed remotely, or respond to alarms and wait for security officials to arrive and disable them. Doc. 6, pp. 5–7, ¶¶ 26–28. Maynard alleges that she was not compensated for these after-hours trips to unlock the premises, for which she believes she is entitled to overtime pay. Doc. 6, pp. 5–7, ¶¶ 26–28.

Maynard was also required to work between six (6) and eight (8) hours at VCA's annual staff meeting each year on a Saturday in February. Doc. 6, p. 5, ¶ 25. She alleges that VCA did not pay her for her labor at these meetings. Doc. 6, p. 5, ¶ 25.

Furthermore, VCA held garage sales at the school during the 2012-2013 and 2013-2014 school years which ran for approximately twelve (12) hours on a Thursday, Friday, and Saturday in the fall. Doc. 6, p. 7, ¶ 29. Maynard worked at the garage sales and alleges that she was paid for only eight (8) hours of her work during the Thursday and Friday shifts, and that she was not paid at all for her work during the Saturday shifts. Doc. 6, p. 7, ¶ 29.

In October 2015, Maynard suffered an injury and pursued workers' compensation benefits.[4] Doc. 6, p. 8, ¶¶ 37–38.

---

[3] Plaintiff asserts that it takes her approximately six (6) minutes to drive from her home to the VCA facility. Doc. 6, p. 5, ¶ 26.

[4] Plaintiff claims that she sustained an injury "during the course of and within the scope of employment for Defendant." Doc. 6, p. 8, ¶ 37. On June 30, 2016, Plaintiff filed a claim for workers' compensation benefits. Doc. 6, p. 8, ¶ 38.

In a letter dated June 7, 2016, VCA indicated its intention to release Maynard from employment at the end of July 2016.  Doc. 17-1, p. 7.  VCA ended Maynard's employment the following month in a letter dated July 22, 2016. [5]  Doc. 17-1, p. 8.

**B.     The Employment Agreement**

The terms of Maynard's employment for the 2015–2016 school year are set forth in an employment agreement titled "Terms of Employment for Staff Employees" that bears Maynard's signature.[6]  Doc. 9-1, pp. 3–4.  The agreement, in relevant part, provides:

> I agree to attempt to resolve differences with others (parents, fellow-workers, administration and any other person affiliated with VCA) by following the biblical pattern of Matthew 18:15–17 as outlined in section 4.1.7 of the VCA Policy Manual.  I also agree to observe appropriate confidentiality in regard to student, parent and school matters.  Should unresolved issues remain even after following the above process, both the employee and VCA agree that this shall be solved and settled by Christian mediation and, if necessary, legal binding arbitration in accordance with the rules of procedure for Christian Conciliation, a division of Peacemakers® Ministries, P.O. Box 81130, Billings, MT 59108 (406-256-1583).  The complete text of the rules is available at www.Peacemaker.net.  Judgment upon any arbitration decision may be entered in any court otherwise having jurisdiction.  The parties understand that these methods shall be the sole remedy for any controversy or claim arising out of this agreement and expressly waive their right to file a lawsuit in any civil court against one another for such disputes, except for enforcing an arbitration decision.

Doc. 9-1, p. 3, ¶ 10.  This arbitration provision (starting with "Should unresolved issues remain…") is reproduced in Section 4.1.8 of the VCA Policy Manual.[7]  Doc. 9-1, pp. 5-6, § (2)(a).  The employment agreement also provides:

> I agree that I am responsible to read, understand, and abide by my Job Description, the Constitution and Bylaws of VCA, the entire VCA Policy Manual, and the

---

[5] Plaintiff alleges that Defendant terminated her employment in retaliation for her pursuit of a workers' compensation claim.  Doc. 6, p. 8, ¶ 39.  Defendant denies Plaintiff's allegation and affirmatively alleges that its actions were based on "legitimate, non-discriminatory and non-retaliatory reasons."  Doc. 8, pp. 2–3, ¶¶ 15–16.

[6] Defendant has also submitted a copy of a 2014–2015 employment agreement, which bears Plaintiff's signature. Doc 19-1.

[7] VCA asserts that the arbitration provision's reference to Section 4.1.7 of the VCA Policy Manual is a typographical error and is actually meant to refer to Section 4.1.8.  Doc. 9-1, p. 2, ¶ 6.

4

> Parent-Student Handbook. I also agree to abide by any additions, changes, or deletions made to the above documents by the Board of Trustees and I understand that I will be informed of any such changes as they occur.

Doc. 9-1, p. 3, ¶ 6.

Rule 4 of the Rules for Christian Conciliation ("the Rules") states that "Conciliators shall take into consideration any state, federal, or local laws that the parties bring to their attention, but the Holy Scripture (the Bible) shall be the supreme authority governing every aspect of the conciliation process." Doc. 17-2, p. 3, § 4.

### III. ANALYSIS

The Federal Arbitration Act states that an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the Federal Arbitration Act allows courts to stay proceedings and refer disputes to arbitration. The Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

When a party requests that a federal court compel arbitration under a contract, the "federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). "If the district court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration." *Great Earth Companies, Inc. v. Simons*, 288

5

F.3d 878, 888-889 (6th Cir. 2002) (discussing 9 U.S.C. § 4, which sets forth procedure to be followed by district court when presented with a request to compel arbitration).

Courts are to examine contractual provisions in light of the strong federal policy favoring arbitration and resolve ambiguities or doubts as to the parties' intentions in favor of arbitration. *Stout*, 228 F.3d at 714. Ohio law also favors arbitration. *Smith v. Sterling Jewelers, Inc.*, 2013 WL 271813, * 1 (N.D. Ohio Jan. 24, 2013) (relying on *Gaffney v. Powell*, 107 Ohio App.3d 315, 668 N.E.2d 951, 954 (Ohio Ct. App. 1995) and *McGuffey v. LensCrafters, Inc.*, 141 Ohio App.3d 44, 749 N.E.2d 825, 832-833 (Ohio Ct. App. 2001)).

The Sixth Circuit has stated that, "[w]hen considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks:"

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714.

Maynard presents five theories of unenforceability, arguing (A) the arbitration provision denies her access to remedies under federal and state law, (B) the provision denies her access to legal representation, (C) the provision is unconscionable, (D) VCA waived its right to arbitration, and (E) Maynard did not agree to arbitrate her claims nor did she knowingly agree to waive her right to a trial by jury. Maynard also argues that, even if the Court finds that the arbitration clause is legally valid, Maynard is entitled to a jury trial on the issue of whether she agreed to the arbitration clause.

For the reasons set forth below, Maynard's arguments are not persuasive.

A. Access to Remedies Under Federal and State Law

Maynard first argues that the arbitration provision of the employment agreement is unenforceable because it potentially denies Maynard remedies for substantive rights under federal and state law.  The Supreme Court has stated that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  *Mitsubishi*, 473 U.S. at 628.

Maynard argues that, because the arbitration provision and the Rules require her to submit to biblical scripture and make the Bible the supreme authority governing every aspect of the conciliation process, she is required to forfeit her federal rights.  In asserting this argument, Maynard relies on *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000), and *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 606 (6th Cir. 2013).  These cases are readily distinguishable.

In *Floss*, employees challenged the enforceability of an arbitration agreement.  *Id.*  There, the arbitration agreement was not between employees and employer as it is here, but between employees and a third-party arbitration services provider.  *Id.*  Though the court ultimately held the arbitration agreement unenforceable, its decision was based on an apparent lack of consideration, not because the agreement denied the employees any substantive rights.  *Id.* at 316.  Within the arbitration agreement, the third-party arbitration service provider "reserved the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from [the employees]."  *Id.* at 315–316.  The court reasoned that by retaining such broad power to alter the terms of the agreement, the arbitration service provider's promise was illusory.  *Id.* at 316.  Neither the employment agreement nor the Rules of Christian Conciliation at issue in

7

this case include any express reservation of indefinite power to alter the terms of the agreement as to render VCA's promise "illusory."  *See* Doc. 9-1, pp. 3–4; Doc. 17-2.

*Boaz* is similarly inapplicable.  *Boaz* involved a limitations provision within an employment agreement that purported to bar employees from bringing claims against the employer more than six months after the event giving rise to the claim.[8]  725 F.3d at 605.  The court held the provision unenforceable.  *Id.* at 606.  It reasoned that agreeing to bring all claims within six months, as opposed to the FLSA's two-year or three-year limitations period, constituted an impermissible waiver of the employee's FLSA rights.  *Id.*  Maynard's employment agreement contains no such limitation provision.

Although non-binding, a case more on point with this one than either *Floss* or *Boaz* is *Easterly v. Heritage Christian Schools, Inc.*, 2009 WL 2750099 (S.D. Indiana Aug. 26, 2009), which the Court finds instructive.  In *Easterly*, the plaintiff was employed under a contract for approximately 20 years in various positions, including teacher and director positions at a private Christian school for students in grades kindergarten through high school.  *Id.* at 1. The school revoked plaintiff's contract and constructively discharged her by offering her a positon with a substantially lower salary.  *Id.*  The plaintiff filed suit in federal district court alleging breach of contract and discrimination on the basis of her age and disability in violation of the ADEA and ADA.  *Id.*  The plaintiff's contract at issue in the case included a similar conflict resolution and mediation/arbitration provisions as those included in Maynard's contract.  *Id.* at * 1-2.  Like Maynard, the plaintiff in *Easterly* argued that the arbitration provision required her to forgo substantive rights guaranteed to her under the ADEA, ADA and state law, pointing to the provision

---

[8] The limitations provision in *Boaz* stated: "To the extent the law allows an employee to bring legal action against Federal Express Corporation, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first."  725 F.3d at 606.

8

in the agreement that stated "Conciliators shall take into consideration any state, federal, or local laws that the parties bring to their attention, but the Holy Scriptures (the Bible) shall be the supreme authority governing every aspect of the conciliation process." *Id.* at * 3. As in *Easterly*, the Rules require arbitrators to take into consideration applicable law and Maynard has not explained how biblical law might conflict with the FLSA. *See also*, *Floss*¸ 211 F.3d at 313 (finding plaintiff's argument that there was a conflict between arbitration and a claim under the FLSA unpersuasive).

Maynard also points to the recovery of attorney fees as a potential denial of her FLSA rights. Doc. 19, pp. 2–3. Rule 40(C) of the Rules concerns the award of attorney and other fees:

> The arbitrators may also grant to any party any reasonable fees, costs, and expenses related to the resolution of a dispute, including attorney fees. Grounds for such a decision may include but are not limited to: (1) when another party unreasonably refuses to settle a dispute and unnecessarily increases the costs of the matter; or (2) when a party necessarily incurred significantly higher costs than another party, such as travel expenses, in order to participate in conciliation. A grant of fees, costs, and expenses may be made only after all parties who may be affected by the decision have had a reasonable opportunity to comment on the proposed decision.

Doc. 17-2, p. 10, § 40(C); Doc. 19, p. 2. However, as Defendant correctly indicates, these do not represent the only two situations under the Rules in which it is proper to award attorney fees. The two enumerated scenarios are prefaced by the phrase, "[g]rounds for such a decision [to award attorney fees, costs, and expenses] *may include but are not limited to*," clearly implying that the list is not exhaustive. Doc. 17-2, p. 10 (emphasis supplied). Importantly, Rule 40(C) read in conjunction with Rule 4 ("Conciliators shall take into consideration any state, federal, or local laws that the parties bring to their attention…") leads this Court to conclude that Maynard's FLSA right to potentially recover attorney fees is not in jeopardy.

9

Within this framework, conciliators would need to consider the relevant provisions of the FLSA, and would have complete authority to award attorney fees in accordance with the statute if deemed proper.[9]

Maynard also argues that Rule 9(E) requires her to pay the costs of the action and therefore is in conflict with the FLSA. Rule 9(E) states "All fees and costs incurred by the Administrator shall be shared equally by the parties <u>unless</u> agreed otherwise in a fee agreement or <u>determined otherwise by the arbitrator</u> (see Rule 40C)." Doc. 17-2, p. 4, § 9(E) (emphasis supplied). It is clear that the Rule does not mandate, without exception, that costs are to be shared equally. Further, the Court observes that a similar argument was raised and rejected in *Easterly*. 2009 WL 2750099, * 4. As in *Easterly*, the Rules applicable in this case "further provide from the reduction o[f] fees or arrangement of a payment plan based upon the financial situation of the participants." *Easterly*, 2009 WL 2750099, * 4; Doc. 17-2, p. 4, § 9(A). And, as discussed above, Rule 40(C) allows for an award of fees and costs. Thus, Maynard's assertion that the rule allowing for sharing of costs and fees violates her rights under the FLSA fails.

Based on the foregoing, the Court finds that neither the arbitration clause nor the Rules deny Maynard access to available remedies under federal and state laws.

**B.  Access to Legal Representation**

Maynard next seeks to invalidate the arbitration clause by arguing that the Rules of Christian Conciliation have the potential to deny her representation by counsel. A close reading of the Rules does not support this conclusion.

---

[9] 29 U.S.C. § 216(b) allows for the recovery of attorney fees in cases where the plaintiff prevails: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

Rule 13(A) expressly provides that "parties have the right to be assisted or represented by independent legal counsel throughout the conciliation process." Doc. 17-2, p. 5, §13(A). Maynard specifically points to Rule 13(E) as the source of her concern. Rule 13(E) provides:

> During mediation, attorneys shall serve only as advisors to their clients, and the clients will be expected to speak for themselves as much as possible. <u>During arbitration, attorneys may represent and speak for their clients.</u> Attorneys will be expected to respect the conciliatory nature of the process and avoid unnecessary advocacy.

Doc. 17-2, p. 5, §13(E) (emphasis supplied). Maynard's concern would be warranted if the Rules prohibited attorneys from advocating on behalf of their clients during arbitration. However, the Rule clearly states that parties are afforded full access to representation during the arbitration phase of conciliation where any legally binding decision would be made.

Maynard draws additional concern from Rule 13(D) which states that "[i]f other parties will not have attorneys present with them during mediation meetings, the Administrator may exclude all attorneys from mediation meetings [and] [i]f necessary to fulfill the purpose of Christian Conciliation (see Rule 1), the Administrator may disqualify an attorney from participating in conciliation, provided his or her client is given reasonable time to secure another attorney." Doc. 17-2, p. 5, § 13(D).

With respect to the ability to exclude attorneys from a mediation proceeding, mediation is a non-binding proceeding. The Rule does not deny Maynard legal representation during a binding legal proceeding, i.e., during arbitration. Further, the Rule simply serves as a reminder for attorneys to conduct themselves in a civil manner in accordance with the conciliatory spirit of the dispute resolution process. Moreover, in the event of an attorney's disqualification, the Rule does not strip parties of their right to representation. The Rule states that an attorney will be disqualified only after "his or her client is given reasonable time to secure another attorney." *Id.*

11

If, in the course of conciliation, her attorney were disqualified, Maynard would be given time to find alternative legal counsel and would not need to go without representation.

**C.      Unconscionability**

Maynard next argues that the arbitration provision is unconscionable.  "[S]tate law governs generally applicable contract defenses to an arbitration clause, such as fraud, duress, or unconscionability."  *Great Earth*, 288 F.3d at 889 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) (internal quotations omitted).   Further, as indicated above, courts are to examine contractual provisions in light of the strong federal policy favoring arbitration and resolve ambiguities or doubts as to the parties' intentions in favor of arbitration.  *Stout*, 228 F.3d at 714.

"Unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 358 (2008) (internal quotations omitted).  The burden of proving unconscionability rests with the party asserting that the agreement is unconscionable.  *Id.*

Under Ohio law, unconscionability consists of two components: (1) procedural unconscionability and (2) substantive unconscionability.  *Dantz v. American Apple Group, LLC*, 123 Fed. Appx. 702, 709 (6th Cir. 2005); *Schaefer v. Jim Brown, Inc.*, 33 N.E. 3d 96, 99, 2015-Ohio-1994, ¶ 10, (11th Dist. 2015).   A party challenging an arbitration agreement bears the burden of demonstrating <u>both</u> procedural and substantive unconscionability.  *Id.*; *see also Smith v Sterling Jewelers, Inc.*, 2013 WL 271813, * 2 (N.D. Ohio Jan. 24, 2013); *Taylor Bldg. Corp. of Am.,* 117 Ohio St.3d at 358; *Crouse v. LaGrange Junction Ltd.,* 973 N.E.2d 822, 825 (Ohio Ct. App. 2012).  Maynard fails to meet this burden.

Substantive unconscionability involves an analysis of whether contract terms are unfair and unreasonable. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). "Procedural unconscionability concerns the formation of the agreement, and occurs where no voluntary meeting of the minds was possible." *Schaefer*, 33 N.E. 3d at 100 (quoting *Porpora v. Gatliff Bldg. Co.,* 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, ¶ 7 (9th Dist.)). The Sixth Circuit has issued a thorough summary of procedural unconscionability in Ohio:

> In determining procedural unconscionability, Ohio courts look to factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible. The crucial question is whether each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print . . . ?

*Dantz,* 123 Fed. Appx. at 709 (quoting *Morrison*, 317 F.3d at 666) (alterations in original).

Maynard argues that the arbitration provision is procedurally unconscionable because VCA did not explain the terms of the arbitration clause.  Maynard relies on her limited education and lack of computer skills to support this argument.  However, the reasons given do not support a claim of procedural unconscionability.

Maynard has a high school education.  Doc. 17-1, p. 1, ¶ 4.  The entire employment agreement is a mere two-page document.  Doc. 9-1, pp. 3–4.  The arbitration provision is certainly not "hidden within a maze of fine print."  *Id.* at ¶ 10.  If Maynard did not understand the terms after reading the agreement, the onus was on her, not VCA, to ensure that she did.  Ohio courts have indicated that "[a] party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms.  The law does not require that each aspect of a contract be explained orally to a party prior to signing." *Melia v. OfficeMax North Am., Inc.*, 2006-Ohio-4765, ¶ 22 (8th Dist. 2006) (citations omitted); *AMB Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 503

13

(1998) ("A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he had intended, when he could have known the truth by merely looking when he signed." (quoting *McAdams v. McAdams*, 80 Ohio St. 232, 240–41, 88 N.E. 542, 544 (1909)).  In answering *Dantz's* "crucial question," the Court finds that Maynard had a reasonable opportunity to understand the agreement's terms.

Maynard's asserted lack of computer skills does not lend any additional credence to her argument.  While the Peacemakers website is probably the most conventionally convenient avenue of access to the Rules, the arbitration clause also includes the ministry's mailing address and telephone number.  Doc. 9-1, p.3, ¶ 10.  Notwithstanding her professed lack of computer skills, Maynard could have phoned Peacemakers or even initiated written correspondence to request additional information or an explanation of the Rules.  *See e.g., Easterly*, 2009 WL 2750099, * 3 ("While the RPCC [Rules of Procedure for Christian Conciliation] were not attached to the contract, they were . . . readily available on the internet, and there [was] no indication that Easterly could not have obtained them with minimal effort is she had been so inclined.").  It is important to note that Maynard's attempt to navigate the Peacemakers website did not occur until December 1, 2016, months after she filed this case.[10]  Doc. 17-1, p. 3, ¶ 17.  The filings do not indicate any attempt by Maynard to access the Rules prior to signing the agreement.  As stated above, it was Maynard's responsibility to understand the terms of the employment agreement before assenting to the contract.

Maynard further argues that the employment agreement is a contract of adhesion.  The Court finds that it is not.  Even so, an adhesion contract "is not in all instances unconscionable per se."  *Taylor*, 117 Ohio St.3d at 363.  Generally, an adhesion contract is a standardized form contract

---

[10] Plaintiff filed her initial Complaint on July 27, 2016.  Doc. 1.  The "Terms of Employment for Staff Employees at Valley Christian Academy (2015–2016)" was signed by Plaintiff on September 8, 2015.  Doc. 9-1, p. 4.

14

prepared by the stronger party and offered to the weaker party who has little opportunity to negotiate the terms. *Id.* While it may be true that Maynard had little opportunity to negotiate, there was not "an absence of meaningful choice." In the employment context, Ohio courts have recognized "that when a candidate for employment is free to look elsewhere for employment and is not otherwise forced to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable." *Short v. Resource Title Agency, Inc.*, 2011-Ohio-1577, *4 (8th Dist. 2011); *Melia*, 2006–Ohio–4765; *Butcher v. Bally Total Fitness Corp.,* 2003–Ohio–1734, *7 (8th Dist. 2003). There is no indication that Maynard was precluded from seeking employment elsewhere or forced to consent to the agreement.

For these reasons, the Court finds that the arbitration clause is not procedurally unconscionable. Because of the absence of procedural unconscionability, the Court need not address substantive unconscionability because both must be established. *See Dantz*, 123 Fed. Appx. at 709 (since the court found a lack of procedural unconscionability, the court indicated that it need not reach the issue of substantive unconscionability).

In any event, Maynard's substantive unconscionability arguments echo her other arguments, which have been considered and rejected by this Court and/or are not persuasive. For example, she raises again the arguments that the arbitration clause applies biblical law over state and federal law, denies her legal representation, fails to adequately apprise her of the applicable rules, and the Rules are difficult to locate. For the reasons already discussed, the Court finds these arguments not a basis upon which to find the arbitration provision invalid and unenforceable. Maynard also contends that the arbitration is "wholly one-sided" and there is an absence of consideration because it is not binding on both Maynard and VCA. Maynard stresses the employment agreement at paragraph 10 states "I agree to attempt to resolve differences with others

15

. . . " and  asserts that, under the agreement, VCA does not have a reciprocal obligation.  However, Maynard's claim that there is not a mutual obligation to proceed with arbitration is not supported by the terms of the employment agreement.  Paragraph 10 of the employment agreement goes on to state that:

> Should unresolved issues remain after following the above process, <u>both the employee and VCA agree</u> that this shall be solved and settled by Christian mediation and, if necessary, legal binding arbitration in accordance with . . .

Doc. 9-1, p. 3, ¶ 10.

Maynard also relies on *Higher Ground v. Arks, Inc.*, 2011 WL 4738651, Case No. 100611 IDDC (D. Idaho 2011), a case in which the court determined that an arbitration agreement was both procedurally and substantively unconscionable.  That case, however, is distinguishable and does not persuade this Court that the arbitration provision in Maynard's employment agreement is invalid and unenforceable.  In *Higher Ground*, the court determined that the agreement was both procedurally and substantively unconscionable  The court applied North Carolina law to a commercial lease with option to purchase, which included an arbitration clause that expressly excepted from the arbitration clause any disputes pertaining to non-payment of rent.  The court noted that the carve-out was both important and one-sided, stating "[t]he payment of monthly rent is the most significant benefit that [lessor] received from the lease and purchase agreement."  There is no such carve-out in the agreement at issue in this case.

For the reasons set forth above, the Court finds Maynard's claim that the arbitration provision is both procedurally and substantively unconscionable without merit.

**D.     Waiver**

Maynard's fourth argument is that VCA waived its right to arbitration.  Maynard relies on the standard set forth in *Johnson Associates Corp. v. H.L. Operating Corp.*, 680 F.3d 713 (6th Cir.

2012), in support of this argument.  In that case, the Sixth Circuit explained that "a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice."  *Id.* at 717 (internal quotations omitted).  However, "because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred."  *Id.* (quoting *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005).

Maynard asserts that, by terminating her without first "attempting to resolve differences … by following the biblical pattern of Matthew 18:15–17," VCA acted inconsistently with the requirements of the arbitration clause.  However, VCA's termination of Maynard is not indicative of the existence of any "difference" between the parties.  If Maynard took exception to her termination, it was her obligation to attempt to resolve that "difference" with VCA.  In filing the present lawsuit, it was she who acted in a manner inconsistent with the arbitration clause.  *See e.g., Smith v. Sterling Jewelers, Inc.*, 2013 WL 271813, * 4 ("Defendant's decision to terminate Plaintiff without any additional action is permissible and not indicative of an unbalanced enforcement of the arbitration process.").

Maynard further argues that VCA waived its right to arbitration by failing to plead it as an affirmative defense.  Maynard is correct that VCA did not specifically raise the issue of arbitration in its original Answer filed on September 23, 2016.  Doc. 4.  However, "a party may file an answer to a complaint or even file an answer and a counterclaim without waiving its right to arbitration."  *Systran Fin. Servs. Corp. v. Giant Cement Holding, Inc.*, 252 F. Supp. 2d 500, 508 (N.D. Ohio 2003) (quoting *Siam Feather & Forest Products Co., Inc.*, 503 F. Supp. 239, 242 (S.D. Ohio 1980)).  Furthermore, in response to Maynard's First Amended Complaint, filed on October 14,

2016 (Doc. 6), on October 27, 2016, VCA filed its Answer, raising arbitration as an affirmative defense (Doc. 8, p. 4, ¶ 20). And, a few days later, on November 4, 2016, VCA filed its Motion to Stay. Doc. 9. The Court finds that VCA did not act inconsistently with its asserted right to proceed with arbitration and Maynard has failed to show that she has incurred actual prejudice as a result of VCA's alleged late assertion of its right to arbitrate.

### E.     Validity of Agreement to Arbitrate

Maynard's final argument is that she did not agree to arbitrate her claims, and that her waiver of a right to a trial by jury was not knowing or voluntary. This argument is largely a rehashing of the unconscionability analysis.

Maynard asserts that "Though the document seems to contain my signature, I do not remember signing the document titled "TERMS OF EMPLOYMENT for Staff Employees at Valley Christian Academy (2015-2016)."[11] Doc. 17-1, p. 3, § 14; *see also* Doc. 17-1, p. 2, § 7 (Maynard Affidavit indicating she did not remember being presented with, reading, or signing a document titled "TERMS OF EMPLOYMENT for Staff Employees at Valley Christian Academy (2015-2016)" or any similar document). Whether or not Maynard remembers signing the agreement is wholly immaterial to the present analysis. The employment agreement bears her signature, and she does not deny that the signature is genuine. As stated in the foregoing unconscionability analysis, "[a] party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms. The law does not require that each aspect of a contract be explained orally to a party prior to signing." *Melia*, 2006-Ohio-4765 at ¶ 22.

Maynard further argues that she did not agree to arbitrate her claims for unpaid overtime, worker's compensation, or anything arising from the FLSA or various Ohio statutes because the

---

[11] VCA attaches to its Reply brief a copy of a similar employment agreement bearing a signature for Maynard from the prior school year, i.e., 2014-2015. Doc. 19-1.

18

arbitration clause does not specifically include them in its language. This argument is without merit. The arbitration clause provides that "these methods [arbitration] shall be the sole remedy for <u>any controversy or claim arising out of this agreement</u>." Doc. 9-1, p. 3, ¶ 10 (emphasis supplied). This language unequivocally conveys an intent that the scope of the arbitration clause includes any and all claims arising from Maynard's employment.

Maynard argues that the arbitration clause is unclear that she was waving her right to a jury trial due to a typographical error and therefore she should not be bound by the agreement. Specifically, she argues that the employment agreement refers to "section 4.1.7 of the VCA Policy Manual" instead of section 4.1.8 titled "Conflict Resolution." Doc. 9-1, p.2, ¶ 6. Notwithstanding this typographical error and her claim that VCA did not provide her with VCA Policy Manual 4.1.7, the employment agreement itself, which bears Maynard's signature, specifically states: "The parties understand that these methods shall be the <u>sole</u> remedy for any controversy or claim . . . and <u>expressly waive their right to file a lawsuit in any civil court</u> . . ." Doc. 9-1, p. 3, ¶ 10 (emphasis supplied). In light of the foregoing, the Court does not find the arbitration clause ambiguous with respect to the waiver of the right to file suit.

**F.      Necessity of a Jury Trial**

Maynard contends that she is entitled to a jury trial to determine whether the parties agreed to arbitrate. The Federal Arbitration Act provides: "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "[T]he party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate" to show that the validity of the agreement is "in issue." *Great Earth*, 288 F.3d at 889. Maynard does not dispute the genuineness of her signature on the employment agreement containing the arbitration clause. The Court finds

that there are no genuine issues of material fact concerning the making of the agreement and no basis to submit the validity of the arbitration clause to a jury.  *See e.g., Mazera v. Varsity Ford Management Services, LLC*, 565 F.3d 997, 1002 (6th Cir. 2009) ("A naked assertion ... by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue 'the making of the arbitration agreement' for the purposes of Section 4 of the Federal Arbitration Act.") (internal citations omitted).

## IV.  CONCLUSION

For the reasons set forth above, the Court finds the arbitration clause valid and enforceable.  Accordingly, Defendant's Motion to Stay Proceedings Pending Mandatory Alternative Dispute Resolution (Doc. 9) is GRANTED.  Further proceedings in this case are stayed and the Clerk is directed to close this case for administrative purposes, subject to reopening upon motion of a party after a final decision of an arbitrator.

August 21, 2017

                                           Kathleen B. Burke
                                           U.S. Magistrate Judge